UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

MICHAEL TONY VELEZ,

                         Plaintiff,

        -against-                                          9:22-CV-0362 (LEK/ML)

C. PAREDEZ, *et al.*,

                         Defendants.

_____

<u>**DECISION AND ORDER**</u>

## I.      INTRODUCTION

*Pro se* plaintiff Michael Tony Velez ("Plaintiff") commenced this action by filing a

complaint pursuant to 42 U.S.C. § 1983 ("Section 1983") in the United States District Court for

the Southern District of New York ("Southern District") in March 2022, Dkt. No. 2

("Complaint"), together with an application to proceed *in forma pauperis* ("IFP"), Dkt. No. 1

("IFP Application"). In the Complaint, Plaintiff asserts claims for the violation of his federal

constitutional rights arising out of his confinement in the custody of the New York State

Department of Corrections and Community Supervision ("DOCCS"). <u>See generally</u> Compl.

By Order filed on March 29, 2022, Southern District Chief Judge Laura Taylor Swain

granted Plaintiff's IFP Application. Dkt. No. 4. By Order filed on April 12, 2022, Chief Judge

Swain transferred the action to the Northern District of New York. Dkt. No. 5.

## II.     SUFFICIENCY OF THE COMPLAINT

### A.  Governing Legal Standard

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks

to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . the

action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted;

or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). "An action is frivolous when either: (1) the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998) (cleaned up). An action "is malicious if it was filed with the intention or desire to harm another." Tafari v. Hues, 473 F.3d 440, 442 (2d Cir. 2007) (quoting Andrews v. King, 398 F.3d 1113, 1121 (9th Cir. 2005)).

Separately, an action fails to state a claim when the complaint does not "plead 'enough facts to state a claim to relief that is plausible on its face.'" Hardaway v. Hartford Pub. Works Dep't, 879 F.3d 486, 489 (2d Cir. 2018) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The Court accepts as true all facts described in the complaint but need not accept "conclusory allegations or legal conclusions couched as factual . . . allegations." Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir. 2014) (quoting Rothstein v. UBS AG, 708 F.3d 82, 94 (2d Cir. 2013)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S.

at 555). Therefore, a pleading that only "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." Branum v. Clark, 927 F.2d 698, 704–05 (2d Cir. 1991); see also Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000); see also Cortec Indus. Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). "Where it appears that granting leave to amend is unlikely to be productive . . . it is not an abuse of discretion to deny leave to amend." Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993).

### B. Summary of the Complaint[1]

The following facts are set forth as alleged by Plaintiff in his Complaint.

In July 2002, Plaintiff was arrested and charged with assaulting three police officers. Compl. at 4, 25–26. At the time, Plaintiff was on parole. Id. Defendant Paredez ("Paredez"), a parole officer assigned to the Manhattan II, III, and IV offices of the New York State Division of Parole, charged Plaintiff with violating the conditions of his parole. Id. at 2–3, 25–26. In 2003,

---

[1] The Complaint includes exhibits. Compl. at 25–180. To the extent that the exhibits are relevant to the incidents described in the Complaint, the Court will consider the Complaint as well as any documents attached as exhibits. See Cortec, 949 F.2d at 47 (noting "that the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference" under Fed. R. Civ. P. 10(c)).

after a jury trial, Plaintiff was convicted and sentenced as a persistent violent felony offender to an aggregate prison term of 15 years to life upon his convictions of assault in the second degree (two counts), criminal possession of a weapon in the third degree, criminal possession of a controlled substance in the fifth degree, and criminal possession of a controlled substance in the seventh degree. People ex rel. Velez v. Artus, 856 N.Y.S.2d 891 (2008).

In September 2017, Defendant New York State Board of Parole ("NYS BOP") denied Plaintiff parole. Compl. at 4.

In April 2019, Plaintiff was transferred to Shawangunk Correctional Facility ("Shawangunk C.F."). Compl. at 4–5, 29. Prior to arriving at Shawangunk C.F., Plaintiff had not received "a single [m]isbehavior [r]eport" in five years. Id. at 5. At Shawangunk C.F., Plaintiff was confined to the "[h]igh classification unit," and "addressed" Defendant Superintendent Collado ("Collado") "personally" during weekly rounds, and discussed "her officers['] actions and her inactions and the arbitrary and capricious actions being taken against [him]." Id. at 5–6.

On August 22, 2019, Plaintiff received a misbehavior report charging him with violent conduct, refusing a direct order, and harassment. Compl. at 51. Plaintiff was confined in keeplock from August 2019 until December 2019. Id. at 41. In September 2019, Plaintiff filed a grievance, numbered SHG-31962-19, claiming that the misbehavior report was false. Compl. at 53. After the superintendent denied the grievance, Defendant IGRC Director Shelly Mallozzi ("Mallozzi") issued a decision on behalf of the Central Office Review Committee ("CORC") upholding the determination. Id.

In September 2019 and November 2019, the NYS BOP denied Plaintiff parole. Compl. at 5.

In October 2019 and December 2019, Plaintiff filed additional grievances, numbered SHG-32025-19 and SHG-32117-19, related to his religious rights. Compl. at 69, 71.

In January 2020, officers searched Plaintiff's cell and uncovered several items of contraband. Compl. at 55. As a result of the search, Plaintiff received a misbehavior report. Id. at 57. After a disciplinary hearing, Plaintiff was found guilty of possessing an altered item, alcohol, unauthorized medication and tools, contraband, and flammable materials. Id. at 59. Plaintiff was sentenced to keeplock, with a corresponding loss of privileges. Id.

On February 3, 2020, Collado stopped at Plaintiff's cell during rounds and "stared at [him] . . . and stated we are done with you now, your [sic] out." Compl. at 33. Plaintiff was then transferred from Shawangunk C.F. to Clinton Correctional Facility ("Clinton C.F."). Id. at 49.

On March 4, 2020, Plaintiff filed another grievance, numbered CL-0271-20, accusing Collado of allowing her officers to "invent misbehavior reports" in retaliation for filing grievances. Compl. at 29–35, 39. On June 4, 2020, Mallozzi issued a decision denying Plaintiff's grievance. Id. at 3, 49.

On June 7, 2021, Plaintiff filed a grievance, numbered CL-0542-21, and claimed that Defendant Nurse S. Devlin-Varin ("Devlin-Varin") refused to provide medical treatment for his serious medical needs. Compl. at 73, 77. Mallozzi issued a decision and concluded that Plaintiff refused to comply with his treatment plan. Id. at 79.

On June 21, 2021, Plaintiff sent a letter to Mallozzi regarding his "grievance appeals." Compl. at 137–39. Plaintiff accused Defendant IGRC Supervisor C. Gregory ("Gregory") and Mallozzi of refusing to address his grievances. Id.

On June 30, 2021, after a disciplinary hearing, Plaintiff was sentenced to keeplock. Compl. at 111. On July 7, 2021, Plaintiff filed a grievance, numbered CL-0632-21, claiming he

was denied recreation, telephone privileges, kosher meals, and showers while in keeplock. Id. at 109. Mallozzi issued a decision denying the grievance. Id. at 115.

On August 11, 2021, Plaintiff filed a grievance, numbered CL-0789-21, and claimed that, on August 10, 2021, he was placed in the Special Housing Unit ("SHU") because he refused to "give blood" in connection with a "T.B. test." Compl. at 121. Plaintiff alleged he was in "SHU under the guise of quarantine," without a misbehavior report, and "in retaliation for my grievance complaints against medical for their refusal to address my serious medical needs." Id. The IGRC denied the grievance and Plaintiff appealed. Compl. at 125. Mallozzi found that Plaintiff "was appropriately placed on a TB hold." Id. at 129.

On September 17, 2021, Plaintiff field a grievance claiming he was "being deprived of commissary" and enduring "harsher conditions then [sic] those in SHU." Compl. at 131.

By September 23, 2021, "Plaintiff had [b]oth a chest X-ray and spit samples taken, all of which came back negative for T.B." Compl. at 7–8. Despite this, Defendants Devlin-Varin, Nurse John Doe, Nurse Jane Doe, A. Bodrogi, M.D. ("Bodrogi"), Morley, M.D. ("Morley"), Dr. John Doe, and Dr. Jane Doe placed Plaintiff in "OBS" and continued to have Plaintiff confined in the SHU and long-term keeplock "under the guise of an alleged T.B. hold." Id. at 6–8. While confined, Plaintiff was denied clean clothes, hygiene products, access to the law library, access to courts, access to his family and friends, access to a television or radio or any form of communication, commissary, the ability to observe religious holidays, and meetings with the Parole Board. Id.

On September 25, 2021, Plaintiff filed a grievance claiming that he was not permitted to appear before the Parole Board "under the guise of having T.B." Compl. at 143. Plaintiff also complained of his conditions of confinement. Id.

On September 28, 2021, Plaintiff received a misbehavior report charging him with making threats to Bodrogi while in the infirmary. Compl. at 81. After a disciplinary hearing, Plaintiff was found guilty of the charge and sentenced to time previously served in keeplock. Id. at 83.

On October 22, 2021, Plaintiff filed a grievance claiming he was confined to the OBS in a "filthy cell" for one month in retaliation for filing two grievances, numbered CL-0542-21 and CL-0789-21. Compl. at 153–58.

On January 25, 2022, Plaintiff was escorted to a televised parole hearing. Compl. at 8. But the "Defendant Parole Commissioners refuse[d] to conduct a hearing" and then informed Plaintiff that it was being adjourned until July 2022. Id.

On January 31, 2022, Plaintiff sent a letter to Mallozzi claiming that grievance supervisors refused to file his grievances. Compl. at 141.

On March 3, 2022, Plaintiff wrote to Morley and advised that he was placed in OBS "under the guise of allegedly having T.B." Compl. at 168.

Construed liberally,[2] Plaintiff's Complaint contains the following: (1) claims against Paredez; (2) claims against the NYS BOP and Manhattan II, III, and IV; (3) Fourteenth Amendment due process claims related to Plaintiff's parole denials; (4) First Amendment claims related to Plaintiff's free exercise rights; (5) First Amendment retaliation claims; (6) Eighth Amendment claims related to Plaintiff's conditions of confinement; (7) claims related to the

---

[2] "[W]hen a plaintiff proceeds *pro se*, . . . a court is obliged to construe his pleading liberally." Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) (emphasis in original) (cleaned up) (quoting McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004)). See also Phillips v. Girdich, 408 F.3d 124, 130 (2d Cir. 2005) ("We leave it for the district court to determine what other claims, if any, [plaintiff] has raised. In so doing, the court's imagination should be limited only by [plaintiff's] factual allegations, not by the legal claims set out in his pleadings.").

grievance process and violations of DOCCS Directives; and (8) civil rights conspiracy claims. <u>See generally</u> Compl. Plaintiff seeks a declaratory judgment, injunctive relief, and monetary damages. <u>See</u> <u>id.</u> at 19–21. For a complete statement of Plaintiff's claims and the facts he relies on in support of those claims, reference is made to the Complaint.

### C.  Nature of the Action

Plaintiff primarily seeks relief pursuant to 42 U.S.C. § 1983 ("Section 1983"),[3] which "provides a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." <u>Wilder v. Virginia Hosp. Ass'n</u>, 496 U.S. 498, 508 (1990). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." <u>Sykes v. James</u>, 13 F.3d 515, 519 (2d Cir. 1993).

## III.    ANALYSIS

"It is well-settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994) (quoting <u>Moffitt v. Town of Brookfield</u>, 950 F.2d 880, 885 (2d Cir. 1991)). A Section 1983 plaintiff must "allege a tangible connection between the acts of the defendant and the injuries suffered." <u>Bass v. Jackson</u>, 790 F.2d 260, 263 (2d Cir. 1986). The Second Circuit has held that "there is no special rule for supervisory liability," and, as such, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" <u>Tangreti v. Bachmann</u>, 983 F.3d 609, 618 (2d Cir. 2020).

---

[3] Plaintiff also seeks relief pursuant to 42 U.S.C. § 1985 ("Section 1985"). Compl. at 2.

### A.  Claims Against Paredez

Plaintiff alleges that Paredez withheld information "from the court, [t]rial [j]ury, and Plaintiff" related to Plaintiff's July 2002 arrest and 2003 trial in violation of his due process rights. Compl. at 13. "In [S]ection 1983 actions, the applicable limitations period is found in the "general or residual [state] statute [of limitations] for personal injury actions[.]" Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2002) (quoting Owens v. Okure, 488 U.S. 235, 249–50 (1989)). In New York, a three-year statute of limitations applies for personal injury actions and thus to Section 1983 actions. Id.; see also N.Y. C.P.L.R. § 214(5). Although the statute of limitations is an affirmative defense, and must generally await a defense motion, dismissal at this stage is appropriate when the facts supporting the statute of limitations defense are set forth in the papers that a plaintiff submits. Pino v. Ryan, 49 F.3d 51, 53 (2d Cir. 1995) (holding that, for purposes of an initial review under 28 U.S.C. § 1915, a court "may" find "that a complaint is based on an indisputably meritless legal theory" if an affirmative defense, such as the statute of limitations, "appears on the face of the complaint"); see also Akassy v. Hardy, 887 F.3d 91, 95 (2d Cir. 2018) (confirming that *sua sponte* dismissals for failure to state a claim under the *in forma pauperis* statute are appropriate when the "inclusion of dates in the complaint indicat[e] that the action is untimely") (quoting 5B Wright & Miller, Federal Practice and Procedure § 1357, at 721 (3d ed. 2004)).

Federal law determines when a Section 1983 action accrues, which has been held to be the time "when the plaintiff knows or has reason to know of the harm." Connolly v. McCall, 254 F.3d 36, 41 (2d Cir. 2001) (citation omitted). Thus, in determining when a particular claim accrues, courts must focus on when "the plaintiff knows or has reason to know the injury which is the basis of his action." Covington v. New York, 171 F.3d 117, 121 (2d Cir. 1999) (citation

omitted). Here, Plaintiff's alleged due process violations occurred prior to, or in the course of, his arrest and trial in 2002 and 2003. See Dellutri v. Vill. of Elmsford, 895 F.Supp.2d 555, 563 (S.D.N.Y. 2012).

Under the "prison mailbox" rule, the date of filing is the date the prisoner-plaintiff delivered his complaint to a prison guard for mailing to the court, which is presumed to be the date that the complaint was signed. See Houston v. Lack, 487 U.S. 266, 274–76 (1988); Noble v. Kelly, 246 F.3d 93, 97 (2d Cir. 2001). Plaintiff signed and presumably delivered his complaint to a prisoner guard on March 18, 2022. See Compl. at 178. Accordingly, in this action, any Section 1983 claim, to be considered timely filed, must have accrued no earlier than March 18, 2019. Plaintiff's claims against Paredez are thus subject to dismissal as untimely, unless Plaintiff can demonstrate the limitations period with respect to any of these claims was tolled, or that any of these claims is otherwise timely. See Abbas v. Dixon, 480 F.3d 636, 640 (2d Cir. 2007) ("conclud[ing] that the District Court should not have [*sua sponte*] dismissed [a *pro se* plaintiff's] complaint [with prejudice] on the basis of an anticipated statute-of-limitations defense without granting [the plaintiff] notice and an opportunity to be heard" as to "whether he might have meritorious tolling arguments"); see also Abbas v. Dixon, No. 02-CV-0809, 2004 WL 2202640, at *1 (W.D.N.Y. Sept. 30, 2004) (noting that "all of plaintiff's claims were [*sua sponte*] dismissed with prejudice as time barred with the exception of" one claim, before defendants brought their motion to dismiss the one surviving claim).

Plaintiff has alleged no facts implicating Paredez in a continuing violation of Plaintiff's due process rights. Rather, the claims against Paredez are based on discrete events that occurred before March 18, 2019. Moreover, equitable tolling is only available in "rare and exceptional" cases where "extraordinary circumstances prevented a party from timely performing a required

act, and . . . the party acted with reasonable diligence throughout the period he sought to toll."
Walker v. Jastremski, 430 F.3d 560, 564 (2d Cir. 2005) (cleaned up). As the Second Circuit
recognized in Abbas, New York law recognizes the equitable tolling doctrine where a plaintiff
demonstrates that he was induced by fraud, misrepresentations, or deception to refrain from
timely commencing an action, and that he acted with due diligence throughout the period to be
tolled. Abbas, 480 F.3d at 642; see also Gonzalez v. Hasty, 651 F.3d 318, 322 ("Equitable tolling
is an extraordinary measure that applies only when plaintiff is *prevented from filing* despite
exercising that level of diligence which could reasonably be expected in the circumstances."
(emphasis in original)). "[E]quitable tolling is [also] applicable to the time period during which a
prisoner-plaintiff is exhausting his administrative remedies pursuant to the" Prison Litigation
Reform Act. Gonzalez, 651 F.3d at 323. The plaintiff bears the burden of establishing equitable
tolling. Abbas, 480 F.3d at 642.

Here, Plaintiff does not invoke equitable tolling, nor does he "articulate any acts by
defendants that prevented him from timely commencing suit." Abbas, 480 F.3d at 642 (cleaned
up). But now that Plaintiff has been "made aware of the [statute] of limitations issue,"
Muhammadali v. City of New York, 795 Fed. App'x 70, 71 (2d Cir. 2020), he is entitled to an
"opportunity to be heard" as to "whether he might have meritorious tolling arguments." Abbas,
480 F.3d at 640. The Court therefore dismisses Plaintiff's claims against Paredez without
prejudice and grants him leave to amend. Cf. id. (finding error where a district court *sua sponte*
"dismissed [a *pro se* plaintiff's] complaint [with prejudice] on the basis of an anticipated statute-
of-limitations defense without granting [the plaintiff] notice and an opportunity to be heard" as to
"whether he might have meritorious tolling arguments").

### B.  Claims Against Manhattan II, III, and IV

"It is well settled that a state agency is not a 'person' within the meaning of [Section] 1983." Martin v. UConn Health Care, No. 99-CV-2158, 2000 WL 303262, at *1 (D. Conn. Feb. 9, 2000); see also Ferguson v. Morgan, No. 90-CV-6318, 1991 WL 115759, at *1 (S.D.N.Y. June 20, 1991) (finding that "Otisville Correctional Facility Medical Staff" does not qualify as a person under Section 1983). Plaintiff's claims against "Manhattan II, III, and IV" thus fail to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii) because the named entities do not qualify as "persons" under Section 1983. Accordingly, the Court dismisses those claims with prejudice since the defects are substantive, rendering amendment futile. See Cuoco, 222 F.3d at 112.

### C.  Claims Against NYS BOP

Plaintiff's claims against NYS BOP similarly fail to state a claim upon which relief may be granted because the state entity does not qualify as a "person" under Section 1983. They also fail to state a claim for the independent reason that Plaintiff is seeking monetary relief from an entity that "is immune from suit under the Eleventh Amendment." Massey v. N.Y. State Parole, No. 18-CV-0842, 2019 WL 181317, at *2 (E.D.N.Y. Jan. 10, 2019).

The Eleventh Amendment restricts the ability of citizens to bring suit against states in federal court, under the principle of sovereign immunity. U.S. Const. amend. XI; see also Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 267 (1997) ("The Amendment . . . enacts a sovereign immunity from suit, rather than a nonwaivable limit on the Federal Judiciary's subject-matter jurisdiction."). Sovereign immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit. Gollomp v. Spitzer, 568 F.3d 355, 366 (2d Cir. 2009). Congress did not abrogate states' sovereign immunity for the purposes of Section

1983, see Quern v. Jordan, 440 U.S. 332, 342–45 (1979), and New York State has not waived its immunity from suit on the type of claims asserted in Plaintiff's complaint, see generally Trotman v. Palisades Interstate Park Comm'n, 557 F.2d 35, 38–40 (2d Cir. 1977).

With respect to suits brought under Section 1983, "[i]t is well-established that, as an agency or arm of the State of New York, the New York State Board of Parole . . . is immune from suit under the Eleventh Amendment." Massey, 2019 WL 181317, at *2. Plaintiff's claims against NYS BOP thus fail under 28 U.S.C. § 1915(e)(2)(B)(ii), (iii). Accordingly, the Court dismisses Plaintiff's claims against NYS BOP with prejudice since the defects are substantive, rendering amendment futile. See Cuoco, 222 F.3d at 112.

### D. Claims for Damages Against All Defendants in Their Official Capacities

Actions for damages against a state official in his or her official capacity are essentially actions against the state and are thus barred by the Eleventh Amendment. See Will v. Mich. Dep't. of State Police, 491 U.S. 58, 71 (1989). Therefore, Plaintiff's Section 1983 claims for money damages against Defendants in their official capacities, see Compl. at 3 ("Each/All Defendant is sued . . . in their official capacities"), fail under 28 U.S.C. § 1915(e)(2)(B)(ii), (iii). The Court dismisses those claims with prejudice since the defects are substantive, rendering amendment futile. See Cuoco, 222 F.3d at 112.

### E. Fourteenth Amendment Claims Related to Plaintiff's Parole Denials

Prisoners do not have a constitutional right to parole. Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979). Where a state has created a statutory scheme for parole, the Due Process Clause of the Fourteenth Amendment protects prisoners insofar as they "have a legitimate expectancy of release that is grounded in the state's statutory scheme." Barna v. Travis, 239 F.3d 169, 170 (2d Cir. 2001) (per curiam). "The New York parole scheme is not

one that creates in any prisoner a legitimate expectancy of release" before the expiration of a valid sentence. Id. at 171; see also Maldonado v. Mattingly, No. 11-CV-1091, 2019 WL 5784940, at *7 (W.D.N.Y. Nov. 6, 2019). "An inmate's federally-protected liberty interest in parole release is [thus] limited to not being denied parole for arbitrary or impermissible reasons." Villalobos v. New York Div. of Parole, No. 09-CV-8431, 2010 WL 3528926, at *3 (S.D.N.Y. Aug. 23, 2010) (cleaned up). "The arbitrary or capricious reasons must be based on inappropriate consideration of a protected classification or an irrational distinction, or on any other unconstitutional grounds." Mabry v. Cuomo, No. 11-CV-4456, 2012 WL 1711549, at *2 (S.D.N.Y. May 9, 2012) (cleaned up).

Here, Plaintiff states, in a conclusory manner, that the decision to deny him parole was arbitrary and capricious, but fails to offer detailed facts in support of that conclusion. Plaintiff does not identify himself as a member of a protected class; nor does he allege with sufficient particularity that he was denied parole release based upon an "irrational distinction" having been made between himself and other inmates. Rather, Plaintiff generally alleges that in the fall of 2019, "[r]apists" were granted parole, while he and other "non[-r]apist[s]" were denied. Compl. at 5.[4] While denying parole to Plaintiff based on an "irrational distinction" privileging "rapists" over "non-rapists" would violate his due process rights, Plaintiff's allegations on this point lack the necessary factual detail to suggest this claim is plausible. See generally Iqbal, 556 U.S. at

---

[4] Plaintiff also alleges on page 4 of his Complaint that in September 2017, "Defendant New York State Board of Parole, denied Plaintiff and all non[-r]apist and all non[-]white save the openly [g]ay one, [p]arole, utilizing the very same reason for denial[,] [c]learly demonstrating their predetermination." Putting aside the defects related to suing an entity immune from suit, let alone two years after the relevant statute of limitations period has passed, these factual allegations still fail to plausibly allege that he was denied parole for a constitutionally impermissible reason. Plaintiff does not identify himself as a member of a constitutionally protected class of persons. Nor does he allege with any specificity the "predetermination" of the unidentified parole officers.

677–83. Accordingly, Plaintiff's Section 1983 due process claims are dismissed without prejudice for failure to state a claim upon which any relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The Court grants Plaintiff leave to amend, however, since a valid claim might be stated should Plaintiff allege with more detail as to how his parole denials were based on constitutionally impermissible grounds, such as his race, sex, or an "irrational distinction" privileging those who had committed crimes of sexual violence. See Branum, 927 F.2d at 704–05; see also Fed. R. Civ. P. 15(a)(2).

### F.  First Amendment Claims Related to Plaintiff's Free Exercise Rights

Construing the Complaint liberally, Plaintiff alleges that Collado deprived him of his right to exercise his religious beliefs while he was confined at Shawangunk C.F. Compl. at 33, 45, 69.

"Prisoners have long been understood to retain some measure of their rights under the Free Exercise Clause." Brandon v. Kinter, 938 F.3d 21, 32 (2d Cir. 2019) (cleaned up). To state a First Amendment free exercise claim upon which relief may be granted, an inmate "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." Holland v. Goord, 758 F.3d 215, 220 (2d Cir. 2014).[5] "Determining whether a plaintiff's free

---

[5] It remains unclear whether the substantial burden requirement for proving a free exercise violation under the First Amendment remains good law. In Employment Division v. Smith, 494 U.S. 872 (1990), the Supreme Court "took issue with the premise that courts can differentiate between substantial and insubstantial burdens." Ford v. McGinnis, 352 F.3d 582, 582 (2d Cir. 2003) (citing Smith, 494 U.S. at 887). Other circuits have disagreed over whether the substantial burden test continues to apply to free exercise claims. Compare Williams v. Morton, 343 F.3d 212, 217 (3d Cri. 2003) (finding "no support for" defendants' argument that it is "a prerequisite for the inmate to establish that the challenged prison policy 'substantially burdens' his or her religious beliefs"), with Levitan v. Ashcroft, 281 F.3d 1313, 1320–21 (D.C. Cir. 2002) (requiring prisoners demonstrate that free exercise of religion be substantially burdened). This Court proceeds on the assumption that the substantial burden requirement applies, in part because establishing a substantial burden is "not a particularly onerous task," McEachin v. McGuinnis, 357 F.3d 197, 202 (2d Cir. 2004).

exercise rights have been substantially burdened 'requires courts to distinguish important from unimportant religious beliefs, a task for which . . . courts are particularly ill-suited.'" <u>Brandon</u>, 938 F.3d at 32 (quoting <u>Ford</u>, 352 F.3d at 593). Therefore, courts in the Second Circuit should be "wary of making 'conclusory judgments about the unimportance of the religious practice to the adherent.'" <u>Brandon</u>, 938 F.3d at 32 (quoting <u>Ford</u>, 352 F.3d at 593). While certain "belief[s] or practice[s]" may be "so peripheral to the plaintiff's religion that any burden can be aptly characterized as constitutionally de minimis," <u>Ford</u>, 352 F.3d at 593, establishing a substantial burden is "not a particularly onerous task," <u>McEachin</u>, 357 F.3d at 202. For instance, a "relatively small number of violative incidents" should "not prevent" a court "from finding that the prisoner's religious beliefs were substantially burdened." <u>Brandon</u>, 938 F.3d at 35.

Here, Plaintiff has sufficiently pled that his sincerely held religious beliefs were substantially burdened. Plaintiff alleges that "Collado would not allow me to attend any Jewish services," that she did "not allow Shab[b]os [s]ervices," and that as a Catholic, she only accommodated Catholic inmates. Compl. at 33, 45. Plaintiff also claims that on October 18, 2019, he was denied matzah and grape juice for "Shabbos siddur." <u>See</u> <u>Brandon</u>, 938 F.3d at 35 ("In the context of religious feasts and fasting, [the Second] Circuit has previously held that a smaller number of noncompliant meals—even a single violation—can be a substantial burden."); <u>cf.</u> <u>Kravitz v. Fischer</u>, No. 9:12-CV-1011, 2014 WL 4199245, at *13 (N.D.N.Y. Aug. 22, 2014) (Kahn, J.) (dismissing the plaintiffs' First Amendment claim on the grounds that denying the plaintiffs Chanukah candles on a single occasion was de minimis and did not substantially burden their sincerely held religious beliefs).

Accordingly, Plaintiff's First Amendment free exercise claim against Collado survives initial review under 28 U.S.C. § 1915(e)(2)(B) and requires a response from Collado.[6] The Court also grants Plaintiff leave to amend should he wish to raise a new claim for injunctive relief against certain prison officials under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"),[7] which provides greater protection for religious exercise than is available under the First Amendment. See Holt v. Hobbs, 574 U.S. 352, 356–58 (2015); see also Lloyd v. City of New York, 43 F.Supp.3d 254, 263 (S.D.N.Y. 2014) (observing that defendants sued under the RLUIPA have to show that "the challenged action or policy furthers a compelling state interest in the least restrictive manner," whereas the First Amendment only requires the action or policy to be "reasonably related to legitimate penological interests").

### G. First Amendment Retaliation Claims

To state a claim of retaliation under the First Amendment, an inmate must allege facts plausibly suggesting "the following: '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004) (quoting Dawes v. Walker, 239 F.3d 489, 492 (2d Cir. 2001), overruled on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002)). The Second Circuit

---

[6] The Court's refusal to dismiss a claim *sua sponte* for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii) does not preclude a defendant from moving to dismiss the same claim for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) after being served with the Complaint. Presently, the Court does not have the benefit of adversarial briefing on the claim's sufficiency, which may possibly lead the Court to a different conclusion.

[7] Plaintiff alleges that "this facility continues to deny me congregational prayer for all holy days," and requests that he "be afforded the very same religious rights as all other beliefs." Compl. at 69. These general allegations suggest Plaintiff may have a viable claim for injunctive relief under the RLUIPA, should he plead such a claim with sufficient factual detail.

has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." Dawes, 239 F.3d at 491.

The filing of a grievance or lawsuit is protected speech. See Graham v. Henderson, 89 F.3d 75, 80 (2d Cir. 1996); Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir.1995). With respect to the second element, the Second Circuit has defined "adverse action *objectively*, as retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising constitutional rights." Gill, 389 F.3d at 381 (cleaned up) (emphasis in original). The "objective test applies even where a particular plaintiff was not himself subjectively deterred" from exercising his rights. Id. "A plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action." Espinal v. Goord, 558 F.3d 119, 129 (2d Cir. 2001). While there is no "bright line . . . defin[ing] the outer limits" of the "temporal relationship," courts in the Second Circuit have held that an adverse action taken as much as eight months after the protected activity indicated a causal connection. Grant v. Bethlehem Steel Corp., 622 F.2d 43, 45–46 (2d Cir. 1980); but see Hollander v. American Cyanamid Co., 895 F.2d 80, 85–86 (2d Cir. 1990) (finding a lack of evidence that an adverse action, taken three months after the plaintiff's protected activity, was in response to it).

### 1.    *Claim Against Collado*

Plaintiff alleges that Collado "allowed her officers to fabricate multiple misbehavior reports" in retaliation for the filing of grievances. Compl. at 5. For the purposes of this review, Plaintiff has sufficiently alleged that he engaged in protected conduct when he filed grievances in late 2019 and that he suffered an adverse action when he received a misbehavior report in

18

January 2020 that resulted in keeplock confinement. Compl. at 53, 57, 69, 71. With respect to causation, Plaintiff claims that Collado, as the superintendent of the facility, responded to Plaintiff's grievances and allegedly told Plaintiff, "we are done with you now, your [sic] out." Id. at 33.

Upon review and with due regard for Plaintiff's status as a *pro se* litigant, the Court finds that Plaintiff's First Amendment retaliation claim against Collado survives initial review and requires a response from Collado.

### 2. *Claims Against Devlin-Varin, Nurse John Doe, and Nurse Jane Doe*

Examining the facts in a light most favorable to Plaintiff, he alleges that Devlin-Varin, Nurse John Doe, and Nurse Jane Doe placed Plaintiff in the SHU for filing a grievance against Devlin-Varin in June 2021. See Compl. at 6. At this juncture, Plaintiff has sufficiently pled a First Amendment retaliation claim against Devlin-Varin to warrant a response.

The Court reaches a different conclusion, however, with respect to Nurses John and Jane Doe. Generally, alleged retaliation motivated by an action the prisoner took which did not personally involve the prison officials is insufficient for a retaliation claim. See Ortiz v. Russo, No. 13-CV-5317, 2015 WL 1427247, at *11 (S.D.N.Y. Mar. 27, 2015) (granting motion to dismiss retaliation claim where plaintiff "fail[ed] to allege any facts that would support a finding that [defendants] were personally motivated by the dismissal of an earlier grievance they have no apparent connection with").

Plaintiff has not pled how or when Nurses John and Jane Doe became aware of the grievance against Devlin-Varin or why they would be motivated to retaliate against Plaintiff due to the grievance. Accordingly, the Court dismisses Plaintiff's First Amendment retaliation claims

against Nurses John and Jane Doe without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii), and

grants Plaintiff leave to amend.

### H.  Eighth Amendment Claims Related to Plaintiff's Conditions of Confinement

Plaintiff claims that Devlin-Varin, Nurse John Doe, Nurse Jane Doe, Bodrogi, Morley,

Dr. John Doe, and Dr. Jane Doe violated his Eighth Amendment rights because he endured

unconstitutional conditions of confinement while confined in the SHU, OBS, and keeplock from

August 2021 until October 2021. See Compl. at 17 (alleging he was "plac[ed] . . . in . . . a [f]ilthy

[h]ospital [r]oom with [d]ried [b]lood in the toilet, black dirt all over the edge of the entire cell,

and denied from sending . . . mail . . . to family or friends, denied a change of clothes, shampoo,

deodorant," among other alleged deprivations).

While the United States Constitution "'does not mandate comfortable prisons,' . . .

neither does it permit inhumane" treatment of those in confinement. Farmer v. Brennan, 511 U.S.

825, 832 (1994) (quoting Rhodes v. Chapman, 452 U.S. 337, 349 (1981)). "To state an Eighth

Amendment claim based on conditions of confinement, an inmate must allege that: (1)

objectively, the deprivation the inmate suffered was sufficiently serious that he was denied the

minimal civilized measure of life's necessities, and (2) subjectively, the defendant official acted

with a sufficiently culpable state of mind, such as deliberate indifference to inmate health or

safety." Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013) (cleaned up). With respect to the first

prong, "there is no static test to determine whether a deprivation is sufficiently serious; the

conditions themselves must be evaluated in light of contemporary standards of decency." Jabbar

v. Fischer, 683 F.3d 54, 57 (2d Cir. 2012) (cleaned up). Therefore, "conditions of confinement

may be aggregated to rise to the level of a constitutional violation, but only when they have a

mutually enforcing effect that produces the deprivation of a single, identifiable human need."

Walker, 717 F.3d at 125 (cleaned up). As for the second element, evidence that a risk was "obvious or otherwise must have been known to a defendant" may be sufficient for a fact finder to conclude that the defendant was actually aware of the risk. Brock v. Wright, 315 F.3d 158, 164 (2d Cir. 2003).

Plaintiff sufficiently alleges that he was deprived of an "identifiable human need"—"safe and sanitary living conditions." Walker, 717 F.3d at 125; see also Compl. at 17. And in light of the liberality afforded to *pro se* litigants, the Court finds that these alleged conditions would have been so "obvious" to the Defendants that a fact finder could conclude that they were actually aware of the risk. Brock, 315 F.3d at 164.

Accordingly, Plaintiff's Eighth Amendment conditions-of-confinement claims against Devlin-Varin, Nurse John Doe, Nurse Jane Doe, Bodrogi, Morley, Dr. John Doe, and Dr. Jane Doe survive *sua sponte* review and require a response.[8]

### I.   Claims Related to the Grievance Process

"The First Amendment protects a prisoner's right to meaningful access to the courts and to petition the government for the redress of grievances." Shell v. Brzezniak, 365 F. Supp. 2d 362, 369 (W.D.N.Y. 2005). "However, inmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures do[] not give rise to a cognizable [Section] 1983 claim." Id. at 370. "If prison officials ignore a grievance that raises constitutional claims, an inmate can directly petition the

---

[8] Because Plaintiff's claims are asserted against nurses and doctors whose names are not known to Plaintiff, service of process cannot be effected on them unless and until these individuals have been identified by name. If Plaintiff wishes to pursue his claims against defendants Nurse John Doe, Nurse Jane Doe, Dr. John Doe, and Dr. Jane Doe, he must take reasonable steps to ascertain through discovery the identity of those individuals. Defendants Devlin-Varin, Bodrogi, and Morley are directed to respond to reasonable discovery demands from Plaintiff that are aimed at identifying the John/Jane Doe defendants.

government for redress of th[ose] claim[s,]" id., as Plaintiff has done here by filing his Complaint.

Plaintiff's claims that Gregory and Mallozzi failed to properly process his grievances does not rise to the level of a constitutional deprivation. Accordingly, the Court dismisses those claims with prejudice since the defects are substantive, rendering amendment futile. See Cuoco, 222 F.3d at 112.

### J.   Claims Related to Violations of DOCCS Directives

A Section 1983 claim brought in federal court is not the appropriate vehicle by which to raise violations of prison regulations. See Hyman v. Holder, No. 96-CV-7748, 2001 WL 262665, at *6 (S.D.N.Y. Mar. 15, 2001) (holding that allegations of prison regulation violations "are not cognizable under [Section] 1983" because "Section 1983 imposes liability for violations of rights protected by the Constitution and laws of the United States, not for violations arising solely out of state or common-law principles"); see also Sanders v. Gifford, No. 11-CV-0326, 2014 WL 5662775, at *4 (N.D.N.Y. Nov. 4, 2014) (holding that failure to follow a DOCCS directive does not give rise to a § 1983 claim). Accordingly, the Court dismisses those claims with prejudice since the defects are substantive, rendering amendment futile. See Cuoco, 222 F.3d at 112.

### K.   Civil Rights Conspiracy Claims

Plaintiff claims that Defendants conspired to deny him parole. Compl. at 5. To maintain a civil rights conspiracy action under Section 1983 or Section 1985, a plaintiff, at a minimum, "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." Webb v. Goord, 340 F.3d 105, 110 (2d Cir. 2003) (Section 1985); see also Dorsey v. Fisher, No. 09-CV-1011, 2009 WL 4985421, at *3 (N.D.N.Y. Dec. 15, 2009) (Section 1983).

Here, Plaintiff does not allege any facts giving rise to a conspiracy, but instead makes conclusory statements that Defendants conspired with each other. Plaintiff's conclusory allegations do not support a "meeting of the minds" or a plausible conspiracy claim involving any of the defendants.

Accordingly, the Court dismisses Plaintiff's conspiracy claims with prejudice for failure to state a claim upon which any relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The Court grants Plaintiff leave to amend, however, since a valid conspiracy claim might be stated should Plaintiff allege with more detail a "meeting of the minds" that sought to deprive him of a specific constitutional protection or right.

## IV.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that pursuant to the Court's review under 28 U.S.C. § 1915, the following claims are **DISMISSED with prejudice** for failing to state a claim or seeking monetary relief against defendants immune from suit: (1) claims for monetary damages against Defendants, in their official capacity; and (2) claims against the NYS BOP and Manhattan II, III, and IV; and (3) claims related to the grievance process and violations of DOCCS directives; and it is further

**ORDERED**, that the following claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failing to state a claim upon which relief may be granted: (1) claims against Paredez; (2) Fourteenth Amendment due process claims related to Plaintiff's parole denials; (3) First Amendment retaliation claims against Nurses John and Jane Doe; and (4) civil rights conspiracy claims;[9] and it is further

---

[9] Should Plaintiff seek to pursue one or more of the claims dismissed without prejudice by the Court herein, or to bring a new claim under the RLUIPA, he must file an amended complaint. An amended complaint is intended to completely replace the prior complaint in the action, and thus

**ORDERED**, that the following claims survive the Court's *sua sponte* review under 28 U.S.C. § 1915(e)(2)(B) and require a response: (1) First Amendment free exercise claim against Collado; (2) First Amendment retaliation claims against Collado and Devlin-Varin; and (3) Eighth Amendment conditions-of-confinement claims against Devlin-Varin, Nurse John Doe, Nurse Jane Doe, Bodrogi, Morley, Dr. John Doe, and Dr. Jane Doe; and it is further

**ORDERED**, that NYS BOP, Manhattan II, III, and IV, Paredez, Gregory, Mallozzi, Commissioner John Doe, and Commissioner Jane Doe are **DISMISSED** as defendants herein; and it is further

**ORDERED**, that Plaintiff shall take reasonable steps through discovery to ascertain the identity of the Doe defendants. **Plaintiff's failure to timely serve those defendants will result in dismissal** of the claims asserted against them and termination of those defendants from the action; and it is further

**ORDERED**, that the Clerk shall issue summonses and forward them, along with copies of the Complaint, to the United States Marshal for service upon the remaining Defendants. The Clerk shall forward a copy of the summonses and Complaint to the Office of the Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED**, that a response to the Complaint be filed by the remaining Defendants, or their counsel, as provided for in the Federal Rules of Civil Procedure;

**ORDERED**, that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States

---

it "renders [any prior complaint] of no legal effect." Int'l Controls Corp. v. Vesco, 556 F.2d 665, 668 (2d Cir. 1977), cert. denied sub nom., Vesco & Co., Inc. v. Int'l Controls Corp., 434 U.S. 1014 (1978). Therefore, any amended complaint must include all of the claims and allegations Plaintiff wishes to bring against the defendants so that *the amended complaint may stand alone as the sole complaint* in this action.

District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; failure to do so will result in the dismissal of his action**; and it is further

ORDERED, that the Clerk of the Court shall serve a copy of this Decision and Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:     July 22, 2022
           Albany, New York

LAWRENCE E. KAHN
United States District Judge